Arcelio **CRUZ** and Wanda Taylor, individually and as Guardian Ad Litem for Peter Taylor and Star Taylor, Minor Children, Plaintiffs,

v.

**CITY OF WILMINGTON** and John Hartnett, William Browne, Mark Lemon, Kevin Connor, James Ogden, Henry Cannon and Douglas Baylor, individually and in their capacity as City of Wilmington Police Officers, Defendants and Cross–Claimants,

v.

**AGENCY RENT–A–CAR**, a foreign corporation, Cross–Defendant.

**Civ. A. No. 91–165 MMS.**

United States District Court, D. Delaware.

Feb. 23, 1993.

---

Darrell J. Baker, Heiman, Aber & Goldlust, Wilmington, DE, for plaintiffs.

Carol J. Dulin, Asst. City Sol., Wilmington, DE, for defendants and cross-claimants.

Richard W. Pell, Tybout, Redfearn, Casarino & Pell, Wilmington, DE, for cross-defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

Plaintiffs, Aracelio Cruz and Wanda Taylor (individually and as guardian Ad Litem for Pete Taylor and Star Taylor), bring this action against the City of Wilmington and seven of its police officers. The police officers are named in both their official and individual capacities.[1] In the first count of their amended complaint plaintiffs allege, pursuant to 42 U.S.C. § 1983 (1988), violations of

---

1. Plaintiffs also named Agency Rent–A–Car as a defendant, but this claim was dismissed with prejudice on October 22, 1992. D.I. 72. Defendants have made a cross-claim for indemnification under state law against Agency Rent-a-Car which is still outstanding, but not at issue here. D.I. 29 at ¶ 58, 59.

Aracelio Cruz's rights under the United States Constitution. Docket Item (D.I.) 12 at ¶ 31. In their second and third state law counts plaintiffs allege battery upon Mr. Cruz and intentional infliction of emotional distress upon all plaintiffs, both under Delaware law. D.I. 12 at ¶¶ 38, 45. The Court has jurisdiction over the first count pursuant to 28 U.S.C. § 1343 (1988) and has supplemental jurisdiction under 28 U.S.C. § 1367 (Supp. II 1990) over the second and third counts.

For reasons which follow, the defendants' motion for summary judgment will be granted on plaintiffs' first count and plaintiffs' second and third counts will be dismissed for lack of jurisdiction.

## I.

On March 26, 1989, two Wilmington police officers, James P. Ogden and William R. Browne, were driving in a marked police vehicle. D.I. 66 at A–1, A–4. While in the 600 block of Walnut Street, the officers spotted a white Chevrolet Celebrity which displayed Pennsylvania license plates and a rental agency sticker. *Id.*

Due to recent rental car thievery, Officer Browne called the "Central Data Center" to check this particular car's status. D.I. 66 at A–5. The "Data Center" reported the car stolen. *Id.* at A–2, A–5. After Officer Browne called for back up assistance, the officers activated their "emergency overhead equipment" and the vehicle, driven by plaintiff Wanda Taylor, stopped at Third and Walnut Streets. *Id.* at A–2, A–5.

While it is known other patrol cars responded to the call and arrived at the scene, D.I. 66 at A–2, A–5, it is not clear how many officers responded, nor who they were. Among the defendants, Officers Ogden and Browne were already present, and Sergeant Hartnett along with Officers Lemon, Cannon and Baylor all admit to being on the scene. *Id.* at A–13, A–16, A–19 and A–21.[2]

As these officers assembled outside the vehicle, inside it sat four adults and two children, Pete and Star Taylor. The driver of the car was plaintiff Wanda Taylor. D.I. 66 at A–6. Beside her, in the front passenger seat, was plaintiff Aracelio Cruz. On Mr. Cruz's lap sat one or possibly both of the children. *Id.* at A–27. David and Hector DeJesus sat in the back. *Id.* at A–21, A–6.

As the officers approached the vehicle, Officer Browne, and at least one other officer ordered the occupants to keep their hands visible. D.I. 66 at A–5, A–13, A–16 and A–21. According to Mr. Cruz's deposition testimony, the officers twice ordered him to keep his hands on the dashboard. *Id.* at A–27. Despite these orders, Mr. Cruz admits his hands "were moving on top of the dashboard. I didn't put them down." *Id.* at A–28.[3] However, one of the passengers in the vehicle, David DeJesus, stated that Mr. Cruz was *trying to get something out of the glove compartment* until an officer ordered Mr. Cruz to get his hands out of the glove compartment. *Id.* at A–29.

At some point, Sergeant Hartnett took Mr. Cruz by the jacket and pulled him out of the vehicle. D.I. 66 at A–3, A–6, A–19. The Sergeant then placed Mr. Cruz's hands on top of the hood of the car. *Id.* at A–3, A–19. Officer Lemon stated that Mr. Cruz "was told to place his hands on the vehicle," although who told Mr. Cruz to do so is unclear. *Id.* at A–16.

With Mr. Cruz now out of the vehicle, Sergeant Hartnett and Officer Lemon, either individually or in unison, attempted to pat him down. According to his affidavit, Sergeant Hartnett found patting Mr. Cruz down difficult because he again failed to follow instructions and "kept trying to turn around." D.I. 66 at A–13. Officer Lemon stated that after he had begun a pat down, Mr. Cruz made a "sudden movement away from the vehicle." *Id.* at A–16. After his hands had been on the hood of the car, Mr.

2. The only other defendant officer, Kevin Connor, was not at the scene and only appeared later to escort Mr. Cruz to the hospital. *See infra* at 5.

3. In his deposition, Mr. Cruz attempts to explain this by saying, "So they told me to put my hands on top of the dashboard, okay? So I did, but the kids, you know, they were all scared. So they were moving, you know. He told me to keep my hands on top of the dashboard. I said, 'I'm trying.'" D.I. 66 at 27.

Cruz admitted "his hands moved but they were always over the car...." D.I. 66 at A–10. After the pat down, the officers attempted to handcuff Mr. Cruz, but Mr. Cruz held his arms "straight out at his sides." D.I. 66 at A–13. At this point, Sergeant Hartnett and Officer Lemon pulled Mr. Cruz's arms behind his back and handcuffed him. D.I. 66 at A–14, A–16.

The contact occurring during this arrest caused all of the physical injury about which plaintiff Cruz has complained. In response to an interrogatory, plaintiffs described the activity which caused the officers to be named as defendants by saying, "defendants either pulled him or twisted his arm or aided or abetted those who did." D.I. 66 at A–26. Asked to describe the physical injuries suffered as a result of the alleged conduct, plaintiffs responded to an interrogatory by stating "Aracelio Cruz hurt his left shoulder, neck and back." D.I. 66 at A–38.[4]

The three men, Mr. Cruz and the DeJesus brothers, were taken in custody and transported to the police station. D.I. 66 at A–6, A–21. Ms. Taylor with her children stayed in the vehicle and were escorted to the police station. D.I. 66 at A–6. At the station, Ms. Taylor produced the rental agreement through which she had obtained the car. *Id.* The Philadelphia Police were called. They told the Wilmington officers that Philadelphia based rental agencies often do not report returned stolen vehicles. *Id.* The rental agency did not answer a phone call and Ms. Taylor was released. *Id.*

At some point, while the plaintiffs were still at the police station, the final defendant, Officer Kevin Connor, was called in to transport Mr. Cruz to the hospital. D.I. 66 at A–23. Officer Connor transported Mr. Cruz to the Wilmington Hospital for an examination of his shoulder. The Officer stayed with Mr. Cruz for the duration of the examination. *Id.* at A–24.

All of the above activities occurred on March 26, 1989. On March 25, 1991, plaintiffs filed a complaint naming the City of Wilmington and John Doe police officers as defendants. On May 29, 1991, plaintiffs amended their complaint by specifically identifying and naming the individual police officers.

## II.

The defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56 requires the Court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. 56(c).

An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Where there is a dispute, the non-moving party must place in the record sufficient evidence for the Court to find a genuine issue of material fact.

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case; and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

If the non-movant provides no evidence or provided only a scintilla of evidence supporting its position, it will not have sufficiently discharged its obligation to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. at 2512. The Court will enter summary judgment if "the nonmoving party has failed to make a suffi-

---

**4.** In an answer to an interrogatory, plaintiffs admitted that there were no physical injuries to Wanda Taylor nor to her children, the minor plaintiffs in this suit. D.I. 66 at A–10.

cient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

If a non-moving party fails to meet its burden, a rational trier of fact would not be able to find for the non-moving party; and the Court should enter summary judgment against it. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It is not the Court's task to replace the rational trier of fact and to resolve questions about which genuine issues exist. The Court will only enter summary judgment if no rational trier of fact could weigh the evidence and find for the nonmoving party. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

Because the plaintiffs have not introduced any evidence on their own behalf, but have rested on the defendants' record, Rule 56(e) is of particular pertinence. Federal Rule of Civil Procedure 56(e) states:

> When a motion for summary judgment is made and supported under this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). In response to this rule, the United States Court of Appeals for the Third Circuit has stated,

> Given the opportunity to respond to a movant's affidavits, an adverse party may not rest upon a mere cryptic and conclusory allegations in his pleading, but must set forth specific facts showing that there is a genuinely disputed factual issue for trial. Where this opportunity to supplement the record is ignored, summary judgment for the movant who has carried his burden of proof is appropriate.

*Tunnell v. Wiley,* 514 F.2d 971, 976 (3d Cir.1975). *See also Dowling v. City of Philadelphia,* 855 F.2d 136, 143 (3d Cir.1988) (affirming summary judgment on a § 1983 claim because city had carried burden and plaintiff had introduced no contradictory evidence). Based upon these standards the Court need only determine whether the defendants have carried their burden of showing that no genuine issue of material fact arises from the record they have constructed through affidavits, answers to interrogatories, depositions and admissions.

### III.

■■■ As an initial matter, the Court must address a statute of limitations argument which has been raised by the defendants. Defendants concede there was a timely filed complaint but point out the officers were not named until after the close of the applicable limitations period.[5] Because the officers were only named after the statute had expired, the defendants argue that the officers should be dismissed from the suit as a matter of law. Plaintiffs answer that under Rule 15 of the Federal Rules of Civil Procedure, the statute of limitations is avoided when changing parties if the amendment

---

5. In the original complaint, filed on March 25, 1991, the officers were only referred to as "an unknown number of Wilmington Police Officers". D.I. 1. Because replacing "John Doe" defendants amounts to a change in parties, *Varlack v. SWC Caribbean Inc.,* 550 F.2d 171, 174 (3d Cir.1977), when the officers were finally named, the complaint "changed" parties. Applying the Delaware statute of limitations for personal injury claims as required under § 1983, this change occurred on May 29, 1991, approximately two months after the expiration of the statute of limitations. *See Wilson v. Garcia,* 471 U.S. 261, 278–280, 105 S.Ct. 1938, 1948–49, 85 L.Ed.2d 254 (1985) (under § 1983 claims, a court must apply the statute of limitations which applies to personal injury claims in the forum state); *Cuffy v. Getty Refining and Marketing Co.,* 648 F.Supp. 802, 807 (D.Del.1986) (citing 10 Del.Code Ann. tit. 10, § 8119 (1974) (as applicable two year statute of limitations). The events giving rise to the cause of action occurred on March 26, 1989. Two years would have expired on March 26, 1991.

"relates back" to the time of the filing of the original complaint. Fed.R.Civ.P. 15(c)(3).

The application of Rule 15. is complicated by an amendment to the Federal Rules of Civil Procedure which became effective on December 1, 1991. Because this case was filed in March of 1991 and was pending on December 1, 1991, defendants argue that the former version of Rule 15 should apply and that under that version, the officers were entitled to the statute of limitations defense.

The former version of section (c) of Rule 15 of the Federal Rules of Civil Procedure stated,

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, *within the period provided by law for commencing the action* against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c) (effective until Dec. 1, 1991) (emphasis added).

In contrast, the amended version of section (c) of Federal Rule of Civil Procedure 15 states, in part,

> An amendment of a pleading relates back to the date of the original pleading when
>
> .    .    .    .    .
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming party against whom a claim is asserted if the foregoing provision (2) is satisfied and, *within the period provided*

*by Rule 4(j) for service of summons and complaint,* the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c) (effective December 1, 1991) (emphasis added). The "period provided by Rule 4(j)" of the Federal Rules of Civil Procedure is "120 days after the filing of the complaint". Fed.R.Civ.P. 4(j).

A comparison of the rules reveals substantial similarity in the requirements for an amendment changing a party to relate back. Both the former and the amended rule require the "claim or defense asserted in the amended pleading" to have arisen "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading". Both require the party to be brought in to have "received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

The most significant change between the original and amended Rule 15 is the additional time now allotted in which a party to brought in by amendment may receive notice. Under the old rule, the party had to receive notice "within the period provided by law for commencing the action". Under the amended rule a party must receive notice anytime "within the period provided by Rule 4(j) for service of summons and complaint", namely 120 days.

Plaintiffs amended complaint was filed within the limitations period. Plaintiffs named and served all the defendants within the first week of June, well within 120 days of March 25, the date on which the complaint had originally been filed. D.I. 16–23. If the amended rule applies retroactively, the officers cannot successfully invoke the statute of limitations as a defense.

The order implementing the amended version of Rule 15 provides guidance as to which version of the rule to apply. The Order from the Supreme Court adopting the amendment states, "changes in the Federal Rules of Civil Procedure shall take effect on December 1, 1991 and shall govern all proceedings in civil actions thereafter commenced *and, insofar as just and practicable, all proceedings in civil actions then pending....*" Amendments to the Federal Rules of Civil Procedure, April 30, 1991, 134 F.R.D. 525 (1991) (emphasis added).

As the Order permits application of the new rule "insofar as just and practicable", the question arises as to which party has the burden to show whether the specific application of the amendment is "just and practicable". Because the notes to the amendment explain the new version as more consistent "with the liberal pleading practices secured by Rule 8", I conclude the new, more liberal rule should apply unless the defendant demonstrates application of the new rule would not be "just and practicable".[6] Fed.R.Civ.P. 15 advisory committee's note. *See Wilson v. City of Atlantic City,* 142 F.R.D. 603, 605 (D.N.J.1992) (because " 'to the maximum extent possible, the amended rules should be given retroactive application' ", court required the defendant to show application would not be "just and practicable") (quoting *Skoczylas v. Federal Bureau of Prisons,* 961 F.2d 543, 546 (5th Cir.1992) (citations omitted)). *Compare Hurst v. Beck,* No. 91–2492, 1992 WL 189496, at *2, 1992 U.S.Dist. LEXIS 11377, at *9 (E.D.Pa. Aug. 3, 1992) (applying amended rule retroactively because of liberal policy governing amendments) *with In re Bexar County Health Facilities Dev. Corp.,* No. MDL 768, 1992 WL 247111, at *2, MDL No. 768, 1992 U.S.Dist. LEXIS 15967, at *6 (E.D.Pa. Sept. 25, 1992) (refusing to apply new rule retroactively because 1) original complaint filed four years before rule became effective; 2) issue of allowing an amendment first argued in 1988; and 3) plaintiff failed to argue it should apply and

defendant had argued it should not apply). *Cf. Alber v. Illinois Dept. of Mental Health & Developmental Disabilities,* 786 F.Supp. 1340, 1380 n. 49 (N.D.Ill.1992) (applying old rule to pending action and stating, without support, that new rule applies only prospectively). As the defendants have not presented any reason sufficient to find application of the amended rule unjust or impracticable, the Court holds that the amended rule should be given retroactive application with the consequent obviating of the statute of limitations defense.

## IV.

■ Plaintiffs' federal claims have been brought under 42 U.S.C. § 1983 (1988) which reads, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

As the Supreme Court has repeatedly stated, "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor,* 490 U.S. 386, 393–394, 109 S.Ct. 1865, 1869–70, 104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2695 n. 3, 61 L.Ed.2d 433 (1979)). Before addressing the alleged deprivation of "rights elsewhere conferred", the Court notes that the officers in their official capacity are legally indistinct from the city itself. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other then name, to be

---

6. Even if the burden were on plaintiffs to persuade the Court that retroactive application were "just and practicable," there is nothing in the

defendants' generated summary judgment record to compel any conclusion other than retroactive

treated as a suit against the entity.").[7] The Court will first address the constitutional violations as alleged against the city, including its officers, and will then address the violations as alleged against the police officers in their individual capacity.

A. Liability of the Municipality

■ The Supreme Court has stated, "proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights,* —— U.S. ——, ——, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992). The Court finds no constitutional violation occurred on the facts as presented in the summary judgment record. As a consequence, it is unnecessary to address the second prong of *Collins.*

In their amended complaint and their brief, plaintiffs assert the officers exercised "excessive force". D.I. 12 at ¶ 24; D.I. 70 at 9–12. The Supreme Court has stated, "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871.

In determining reasonableness, the Court indicated that courts should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect actively resists arrest or attempts to evade arrest by flight." *Id.* at 396, 109 S.Ct. at 1871. The Supreme Court also stated, "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... 'Not every push or shove, even if

it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

In this case, the complaint asserts a violation of Mr. Cruz's constitutional rights, while the other plaintiffs only assert claims under state law. Asked to describe the harmful acts of the defendants, plaintiffs stated "that the defendants either pulled him [Cruz] or twisted his arm or aided and abetted those who did." D.I. 60 at A–26. The issue under *Graham* is whether the officers were acting reasonably when they took this action.

Looking to one of the considerations suggested in *Graham,* "whether the suspect poses an immediate threat to the safety of the officers or others", the Court can ignore neither Mr. Cruz's own statement that he did not obey the orders of the officers while in the car, nor the fact that he was moving his hands. D.I. 66 at A–27—A–28. When initially approaching a vehicle, police officers can always be expected to have concern for their safety, regardless of who appears within the car. This concern itself would not justify pulling an otherwise cooperative occupant from a vehicle and handcuffing him. Mr. Cruz, however, was by no means a cooperative occupant. Standing beside a vehicle and facing an occupant who disobeys orders by moving his hands in the vicinity of the glove compartment, the officers' concern for safety would only increase. In light of these concerns, it was reasonable for the officers to pull Mr. Cruz from the car.

As to another of the considerations mentioned in *Graham,* "whether the suspect actively resists arrest", there is undisputed testimony that Mr. Cruz failed to keep his hands on the hood of the vehicle despite having them placed there and being told to keep them there. D.I. 66 at A–3, A–10, A–

application of the amendment was just and practicable.

**7.** Indeed, the Supreme Court pointed out in a footnote that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell* ... local government

units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14 (citing *Monell v. New York Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)).

13, A–16, A–19. For a second time, Mr. Cruz disobeyed the orders of the officers and continued to move his hands. Finally, his failure to remain still during the ensuing pat down, D.I. 66 at A–13, A–16, could only reinforce the officers' impression that Mr. Cruz had no intention of cooperating and posed a threat to the surrounding officers. In this situation, it was reasonable for the officers to twist Mr. Cruz's arms in order to handcuff him.

For these reasons, the Court does not find this action went beyond "the right to use some degree of physical coercion. . . ." which the Supreme Court has afforded arresting officers. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871. *Compare Lodato v. Township of Evesham*, 782 F.Supp. 957, 960–961 (D.N.J. 1992) (granting summary judgment because, after approaching reportedly stolen vehicle, officers acted reasonably by drawing weapons, threatening plaintiff and handcuffing her) *with Janicsko v. Pellman*, 774 F.Supp. 331, 341–342 (M.D.Pa.1991), *aff'd*, 970 F.2d 899 (3d Cir.1992) (denying summary judgment because officer may have repeatedly kicked plaintiff, but stating "[t]he other measures used by defendants, the restraints, the pulling of hair, the manhandling, may be viewed as a matter of law the concomitants of a contested arrest.") Because the force used by the officers appears to be no more than necessary to handcuff Mr. Cruz and because Mr. Cruz repeatedly refused to follow the officers' directions while both inside and outside the vehicle, there is no genuine issue of fact that the officers acted reasonably. Accordingly, the defendants have satisfied their burden of showing that the Fourth Amendment has not been violated. For this reason, summary judgment will be granted to the defendant City of Wilmington and the officers in their official capacity.

**B. Officers in Their Individual Capacity**

■ The finding that no constitutional violation occurred during the events at issue directly impacts the legal analysis of the plaintiffs' claims against the officers in their individual capacity. "On the merits, to establish *personal* liability, in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).[8] Because it has already been concluded that the record does not raise a genuine issue of material fact that a constitutional violation occurred, there is no reason to address the individual liability of the officers. On the present record, they committed no acts which could have given rise to liability under federal constitutional law. Had there been a violation, the Court would consider the immunity defense offered by the officers. On this record, however, there is no potential for liability against which the officers need to assert immunity. For this reason, the defendants' motion for summary judgment will be granted as to the liability of the officers in their individual capacity.[9]

**V.**

■ In paragraph thirteen of their amended complaint, plaintiffs urge this Court to exercise pendent jurisdiction over their state law claims. D.I. 12 at ¶ 13. In addition, the defendants have asserted a state law cross-claim against Agency Rent–A–Car for contribution and indemnification. D.I. 29 at ¶ 58.[10] Each of these claims arises under the Court's supplemental jurisdiction as granted by 28 U.S.C. § 1367 which reads, in part,

(a) . . . in any civil action of which district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so

---

**8.** As the Supreme Court has explained, "Personal-capacity actions are sometimes referred to as individual-capacity actions." *Graham*, 473 U.S. at 165, n. 10, 105 S.Ct. at 3104, n. 10.

**9.** Courts have looked to the presence or absence of a reasonable suspicion held by police officers when those officers make a stop or an arrest. *See, e.g., Schwab v. Wood*, 767 F.Supp. 574, 585 (D.Del.1991). Plaintiffs here do not dispute the legitimacy of the initial stop of the vehicle, nor do they dispute the subsequent arrest of Mr. Cruz. While their amended complaint does allege a violation of the Fourth Amendment, the plaintiffs' brief argues only that the force used was unreasonable, not that the stop nor the arrest was unreasonable.

**10.** Plaintiffs have already dismissed their claim against Agency Rent–A–Car. D.I. 72.

related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

. . . . .

(c) The district courts may decline to exercise supplemental jurisdiction over a claim ... if—

. . . . .

(3) the district court has dismissed all claims over which it has original jurisdiction.

28 U.S.C. § 1367 (Supp.II 1990). Under section (c) of this statute, Congress has granted the district courts discretion to dismiss state law claims over which the court had jurisdiction under section (a).

The United States Court of Appeals for the Third Circuit has stated that when determining whether to exercise supplemental jurisdiction, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware County, Pa.,* 983 F.2d 1277, 1284 (3d Cir.1993) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). Because this case is at the summary judgment stage, the Court finds no overriding interest of judicial economy or convenience. Nor is there any apparent unfairness in dismissal of the state law claims. The Court in the exercise of its discretion under 28 U.S.C. § 1367 will "decline to exercise supplemental jurisdiction" over the plaintiffs' state law claims and the defendants' state law crossclaim because the Court will "dismiss all claims over which it [had] original jurisdiction."

### VI.

For the forgoing reasons, defendants' motion for summary judgment will be granted on the plaintiffs' first count alleging a violation of the plaintiffs' constitutional rights. Plaintiffs' second and third counts will be dismissed because the Court declines to exercise its supplemental jurisdiction conferred by 28 U.S.C. § 1367. An appropriate order will issue.