Trina **WYNN,** Plaintiff,

v.

Charles V. **MORGAN,** Defendant.

No. CIV. 3–93–cv–548.

United States District Court, E.D. Tennessee, at Knoxville.

July 8, 1994.

Gloria S. Moore, Moore & Clark, Knoxville, TN, for plaintiff.

J. Robert Walker and Ronald C. Leadbetter, Office of Gen. Counsel, University of Tennessee, Knoxville, TN, for defendant.

## MEMORANDUM OPINION

PHILLIPS, United States Magistrate Judge.

This matter is before the undersigned pursuant to the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(c), by consent of the parties, and by order of reference from the Honorable Thomas G. Hull, United States District Judge [Doc. 22].

This case was originally brought against the University of Tennessee, at Knoxville, and officer Charles V. Morgan, Badge No. 148, Unit 49, University of Tennessee Police Force, individually and as a police officer for the University of Tennessee at Knoxville, Tennessee [Doc. 1]. However, by order filed January 13, 1994, plaintiffs' claims against the University of Tennessee and Officer Charles V. Morgan, in his official capacity, were dismissed under Rule 12(b)(6), Federal Rules of Civil Procedure [Doc. 14]. Thus, the only remaining defendant is Charles V. Morgan in his individual capacity.

Defendant Morgan has now moved for summary judgment [Doc. 16], supported by memorandum [Doc. 16a], and plaintiff has responded in opposition [Doc. 19]. As the bases for his motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, defendant asserts that he has not deprived plaintiff of any right guaranteed by the Fourth, Fifth, Eighth, or Fourteenth

Amendments to the United States Constitution, that plaintiff has failed to state a claim under 42 U.S.C. § 1981 upon which relief can be granted, and that defendant is entitled to qualified immunity [Doc. 16].

In response, plaintiff asserts that her cause of action alleges violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §§ 1981, 1983, and 1988, alleging deprivation of plaintiff's constitutional rights to be secure in her person, right to be free from malicious prosecution, right to be free from cruel and unusual punishment, and right to due process. She also asserts that this action is before the court on pendent jurisdiction of state claims of false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, outrageous conduct, negligence, gross negligence, and negligent hiring, retention, supervision and training in violation of the laws of the state of Tennessee [Doc. 19].

As correctly pointed out by plaintiff, defendant previously moved under Rule 12(b)(6) to dismiss this cause of against him individually, asserting that as an employee of the state of Tennessee, he is absolutely immune from suit under Tennessee Code Annotated § 9–8–307(h) (Supp.1993). The district court ruled that this section of Tennessee Code Annotated immunizes state officers and employees from liability for acts or omissions within the scope of their employment, except for willful, malicious, or criminal acts or omissions or acts or omissions done for personal gain. However, the court ruled, the claims asserted by plaintiff in this lawsuit appear to be predicated on deliberate misconduct and the court held that no federal claim and no state law claim based upon deliberate misconduct would be dismissed at that time [Doc. 11]. The district court subsequently dismissed plaintiff's cause of action as to the University of Tennessee and Officer Morgan in his official capacity [Doc. 14], but did not alter or otherwise amend its ruling in regard to defendant in his individual capacity.

## I. STATEMENT OF FACTS

In her complaint, plaintiff alleges that on or about September 20, 1992, she was the driver of an automobile traveling east in the far right lane on Cumberland Avenue in Knoxville, Tennessee, when a University of Tennessee police car traveling west abruptly entered into plaintiff's lane of travel, within approximately a 20–foot distance between her vehicle and the police vehicle. At the time the University of Police car entered plaintiff's lane, there were no flashing lights or sirens used and no indication that the University of Tennessee police car was in an emergency, and that after traveling approximately three additional blocks, plaintiff heard the sound of sirens coming from behind her vehicle and observed flashing blue lights in her rear view mirror. Plaintiff alleges that she pulled her vehicle over at the intersection of Cumberland and Estrabrook, two University of Tennessee police cars pulled over behind her, and Officer Charles V. Morgan approached her car and asked her to get out of her car. Officer Morgan asked plaintiff if she had been drinking, and she replied negatively.

When plaintiff inquired of Officer Morgan why he had stopped her, he replied that she drove on the yellow line. Officer Morgan asked to give plaintiff a field sobriety test, to which she agreed, and Officer Morgan had plaintiff to say the alphabet, stand on one leg at a time, and count one through nine. Officer Morgan then told plaintiff to count one through 30, and once again asked plaintiff to say her alphabet. Officer Morgan asked plaintiff to walk a straight line counting one through nine, he had her walk a straight line counting one through nine and shined a penlight in her eyes, moving it backward and forward.

Plaintiff asserts that after she took the field sobriety test, defendant told her everything was okay but that he wanted her to take breathalyzer test, to which she consented. Plaintiff turned around and walked to the end of her vehicle, defendant asked her to approach him and turn around, she turned around and defendant patted her down and hand cuffed her from the back. Plaintiff asked defendant why she was being placed under arrest, and he replied for DUI. Plaintiff replied that she had agreed to take the breathalyzer test or a blood test, but defen-

dant then replied that she had refused to take the breathalyzer test, grabbed her, and forced her into the police cruiser. She asserts that defendant arrested her without cause or justification, harassed her by forcing her to endure pseudo-sobriety tests and refused to give her a breathalyzer or blood test after she consented to such to determine whether she was driving under the influence of drugs or intoxicants.

Plaintiff was placed under arrest by defendant and taken to the Knox County jail where she remained in police custody until bail was posted. Plaintiff was charged with resisting arrest and driving under the influence. She also asserts that after she had taken the field sobriety tests, defendant told her everything was okay but that he wanted to give her the breathalyzer test and that plaintiff agreed to take the test. However, she asserts, rather than being given a breathalyzer test or a blood test, defendant frisked her, placed her in handcuffs, and placed her under arrest [Docs. 1, 19].

In support of his motion for summary judgment, defendant has filed his affidavit which sets forth that he is a police officer employed by the University of Tennessee, acting under the authority granted the University of Tennessee police officers pursuant to the laws of the state of Tennessee. He relates that on September 20, 1992, he placed plaintiff under arrest for driving under the influence based upon his perception and belief that she had been driving recklessly and under the influence of drugs. In addition, he charged plaintiff with resisting arrest based upon his perception and belief that she unlawfully attempted to avoid arrest.

He asserts that the specific behavior leading him to those conclusions was: (1) At approximately 12:30 a.m. on September 20, 1992, he was on duty patrolling the U–T campus in a U–T police cruiser. (2) He was traveling in the left east-bound lane of Cumberland Avenue adjacent to the U–T campus when he noticed plaintiff's vehicle crossing over into his lane from the east-bound right lane. (3) He swerved into the west-bound lane to avoid a collision with plaintiff's vehicle since her vehicle crossed all of the way into the left lane of traffic, swerved back into the

right lane of traffic, and continued traveling east-bound. (4) He pulled into the right lane behind plaintiff, activated his emergency lights, and briefly hit his siren in an attempt to pull her vehicle over. (5) When plaintiff's vehicle finally stopped, he notified police headquarters that he had effected a traffic stop, called out the license plate number, and turned his spotlight on the rear of plaintiff's vehicle. (6) He then got out of his automobile and began approaching plaintiff's vehicle, but when he got approximately halfway to plaintiff's car, she accelerated and left the scene. (7) Believing that plaintiff was deliberately fleeing, defendant ran back to his vehicle, notified the station that he was in pursuit, activated his siren, and began to pursue plaintiff's car. (8) He pursued plaintiff's car until another U–T patrol car pulled into the east-bound lane partially blocking it, and plaintiff's vehicle then made a right-hand turn onto Estrabrook Drive and stopped. (9) After stopping, plaintiff got out of her car and began yelling at him, but at his request, she agreed to take field sobriety tests after initially refusing to do so. (10) He then administered the three standardized field sobriety tests to plaintiff in the manner instructed at the Tennessee Law Enforcement Training Academy at Donelson, Tennessee. (11) These tests are walk and turn, the one-leg stand, and the horizontal gaze nystagmus. (12) Based upon defendant's observations of plaintiff's driving behavior and his judgment that she failed all three sobriety tests, he concluded that plaintiff had been driving while under the influence of an intoxicant or other stimulant in violation of state law, and placed her under arrest. (13) When defendant requested plaintiff to turn around and put her hands behind her back for the purpose of placing handcuffs on her wrists, plaintiff abruptly and forcefully pulled away from him and started running back to her car. (14) Defendant ran after plaintiff, caught her by the arms, and put handcuffs on her wrists. (15) Based upon these circumstances, defendant concluded that plaintiff was attempting to avoid arrest in a manner justifying the additional charge of resisting arrest.

Defendant asserts that at no time did he use force in excess of that which he believed to be necessary to bring plaintiff under control and accomplish her arrest, and that the procedures used in arresting plaintiff were fully consistent with the training he had received at the Tennessee Law Enforcement Training Academy, pointing out that all University of Tennessee police officers are required to undergo such training before being commissioned to serve as police officers for the University of Tennessee [Doc. 16, Morgan Aff. attached].

Defendant has also attached to his motion portions of the discovery deposition of plaintiff Trina Wynn taken on March 2, 1993, in a related case (*Clifford E. Bishop v. University of Tennessee at Knoxville*, Case No. 3–92–785), wherein plaintiff denies that she had anything to drink on the evening of September 20, 1992, but that as an epileptic, she has to take medication on a continuing basis, and at the time of the incident about which plaintiff now complains she was taking Tegretol [Doc. 16, Wynn Dep., p. 69]. Plaintiff also related in her deposition that she did not at any time see a police cruiser along side of her as she traveled down Cumberland Avenue on September 20, 1992, that she was traveling with a friend, Clifford Bishop, that the traffic was pretty heavy, and that she later had her medication changed because Tegretol caused some side effects [Doc. 16, Wynn Dep., pp. 19, 68]. Plaintiff further testified that Officer Morgan was polite to her, that he did not treat her in any way that was unduly rough, did not beat her, did not hit her, did not strike her, did not shove his hand in her face, did not poke with his night stick, did not push her so that she lost her balance, but that he did grab her arm and pushed her or shoved her into the patrol car. However, she further testified that defendant did not push her so hard that she fell over when she got into the police cruiser [Doc. 16, Wynn Dep. pp. 37–38].

In regard to the side effects caused by the Tegretol, plaintiff testified that she experienced "staring" spells and hair loss, that all of a sudden her mind would wander off, that it was similar to having a seizure but that she was not having one, that it is like having a mind seizure, and that she would often have these "staring" spells, on a daily or weekly basis [Doc. 16, Wynn Dep., p. 127].

Defendant has filed, in support of his motion for summary judgment, the affidavit of Edwin A. Smith, Pharm.D., a licensed pharmacist in the state of Tennessee, who is a clinical specialist in the Department of Pharmacy at the University of Tennessee Medical Center. Dr. Smith states in his affidavit that based upon his training, experience and practice of his profession, he is personally familiar with the applicable standards of acceptable medical care as it applies to pharmacology, that he is familiar with the anti-convulsant drug Carbamazepine, product name Tegretol, and that he is aware of the clinical pharmacology, the precautions and the possible adverse reactions of Tegretol. Dr. Smith relates that he is aware that the precautions for taking Tegretol include warnings about the hazards of operating automobiles while taking this medication as cited in the *Physician's Desk Reference*, (PDR). Dr. Smith further states that he is aware of the possible adverse neurological and sensory effects of Tegretol including but not limited to dizziness, drowsiness, disturbance of coordination and nystagmus as cited in the PDR, and Dr. Smith attaches to his affidavit materials from the PDR, relating that, since dizziness and drowsiness may occur, patients should be cautioned about the hazards of operating machinery or automobiles or engaging in other potentially dangerous tasks while taking such medication [Doc. 16, Smith Aff. w/attachment].

## II. DISCUSSION OF RULE 56, FEDERAL RULES OF CIVIL PROCEDURE

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Three recent decisions of the United States Supreme Court, referred to by some commentators as the summary judgment tril-

ogy,[1] have placed new emphasis upon the early disposition of cases which fall within the ambit of Rule 56, Federal Rules of Civil Procedure. An excellent analysis of the Supreme Court's decisions in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is found in *Street v. J.C. Bradford Co.,* 886 F.2d 1472 (6th Cir.1989). In that decision, Judge Bertlesman painstakingly analyzed the Supreme Court's decisions and set forth the following directives to be gleaned from the Court's rulings:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Street v. J.C. Bradford Co., supra* at 1479–1480.

█ The bottom line of the summary judgment trilogy of cases is that the court, when ruling upon a motion for summary judgment after the parties have had adequate time to develop their proof, must consider the motion as it would on a motion for judgment as a matter of law after the plaintiff has presented his proof and rested his case. The moving party must meet the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case, but if the evidence does not present a sufficient disagreement to require submission to a jury and the responding party has not adduced more than a scintilla of evidence and the record taken as a whole could not lead a rational trier of fact to find for the respondent, the motion should be

1. Childress, A New Era for Summary Judgments: Recent Shifts at the Supreme Court, 116 Federal Rules Decisions 183, 184 (1987); Stempel, A Distorted Mirror: The Supreme Court's Shimmering View of Summary Judgment, Directed Verdict and the Adjudication Process, 49 *Ohio St.L.Rev.* 95, 107–08 (1988); Friedenthal, "Cases on Summary Judgment: Has there been a Material Change in Standards?," 63 *Notre Dame L.Rev.,* 770, 771 (1988).

granted. *Street v. J.C. Bradford Co., supra,* at 1479–1480.

Rule 56(e), Federal Rules of Civil Procedure, stipulates that supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

## III. DISCUSSION OF APPLICABLE AUTHORITIES

Plaintiff's federal cause of action is brought under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1981, 1983, and 1988. Plaintiff also invokes this court's pendent jurisdiction of state claims of false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, outrageous conduct, negligence, gross negligence, and negligent hiring, retention, supervision and training in violation of the laws of the state of Tennessee.

In support of his motion for summary judgment, defendant asserts that he has not deprived plaintiff of any right guaranteed by the Fourth Amendment, of due process guaranteed under the Fifth Amendment, of any right guaranteed by the Eighth Amendment, or her liberty guaranteed by the Fourteenth Amendment. Defendant further asserts that plaintiff has failed to state a claim under section 1981 upon which relief can be granted by this court and that defendant has qualified immunity in his individual capacity. Last of all, defendant argues that there is no basis for the exercise of pendent jurisdiction over the state law claims asserted against him [Doc. 16a].

Under the provisions of 42 U.S.C. § 1981:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Section 1988 of Title 42 provides:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "Civil Rights," and of Title "Crimes," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adopted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the state wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and if it is of a criminal nature, in the infliction of punishment on the party found guilty. In any action or proceeding to enforce the provisions of sections 1981, 1982, 1983, 1985 and 1986 of this Title, Title IX of Public Law 92–318, or Title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the cost.

Under the provisions of 42 U.S.C. § 1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen and the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

■ Although plaintiff has asserted a cause of action under 42 U.S.C. § 1981, it is manifest from plaintiff's complaint, defendant's answer, and from the other filings,

that 42 U.S.C. § 1981 has no application to plaintiff's claims for relief. As pointed out by the Supreme Court in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), section 1981 protects two rights: "the same right ... to make ... contracts" and "the same right ... to ... enforce contracts." The events about which plaintiff complains do not relate to impairing her ability to make contracts or impairing her ability to enforce her contract rights. Therefore, plaintiff's assertion of a cause of action under 42 U.S.C. § 1981 is misplaced in the case *sub judicia.*

■ Plaintiff also asserts that her cause of action arises under 42 U.S.C. § 1988, but this section of Title 42 would only be relevant to the instant proceeding inasmuch as it provides that the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the cost.

■ On the other hand, 42 U.S.C. § 1983 is directly applicable to the case at bar. Defendant correctly points out, however, that although the complaint purports to directly allege a cause of action under the Fourth, Fifth, Eighth, and Fourteenth Amendments, as well as under 42 U.S.C. § 1983, the law in this circuit stipulates that when a plaintiff alleges a cause of action under 42 U.S.C. § 1983, that statutory enactment is the exclusive remedy for the alleged constitutional violations. *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir.1987), *vacated and remanded on other grounds*, 488 U.S. 1036, 109 S.Ct. 859, 102 L.Ed.2d 984 (1989). *See also, Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 734–35, 109 S.Ct. 2702, 2722, 105 L.Ed.2d 598, 626 (1989); *Williams v. Bennett*, 689 F.2d 1370 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983). For these reasons defendant asserts and the court agrees that plaintiff's constitutional claims must be treated as arising exclusively under 42 U.S.C. § 1983 [Doc. 16a, p. 4].

## A. PLAINTIFF'S FIFTH AMENDMENT DUE PROCESS CLAIM

■ Plaintiff asserts a cause of action under the due process clause of the Fifth Amendment. However, the due process clause of the Fifth Amendment applies only to the federal government, and not to state or individual action. *Spiesel v. City of New York*, 239 F.Supp. 106 (S.D.N.Y.1964), *aff'd*, 342 F.2d 800 (2d Cir.1965), *cert. denied*, 382 U.S. 856, 86 S.Ct. 109, 15 L.Ed.2d 94 (1965); *Bell v. Hood*, 71 F.Supp. 813 (S.D.Calif.1947) (*citing Twining v. New Jersey*, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908) and *Barron v. Baltimore*, 32 U.S. (7 Pet.) 243, 8 L.Ed. 672 (1833)).

## B. PLAINTIFF'S EIGHTH AMENDMENT CLAIM

■ Plaintiff asserts that as a direct and proximate result of defendant's actions as set forth in her complaint, she was deprived of rights, privileges and immunities under the Eighth Amendment to the United States Constitution and the laws of the state of Tennessee. However, the Eighth Amendment, by its terms, applies to "cruel and unusual punishments," and the United States Supreme Court has ruled that it applies only to those convicted of crimes. *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711 (1977). In fact, the Sixth Circuit has ruled that since the Eighth Amendment deals only with punishment, the Eighth Amendment cannot invalidate a state law authorizing police officers to use all force necessary to apprehend a suspect. *Wiley v. Memphis Police Dept.*, 548 F.2d 1247 (6th Cir.), *cert. denied*, 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977).

In addition, the testimony of plaintiff dispels any assertion that the Eighth Amendment might be applicable. She testified that defendant was polite to her, that she was not treated with undue roughness, he did not strike, poke, or push her so hard that she lost her balance, and that her only complaint was that defendant shoved her or pushed her into the patrol car [Doc. 16a, Wynn Dep., pp. 23, 37–38]. Plaintiff's testimony demonstrates that she was not subjected to any form of cruel and unusual punishment as those terms are commonly understood.[2]

2. The Eighth Amendment to the United States Constitution also prohibits excessive bail and ex-

## C. PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM

■ Plaintiff alleges that she was deprived of her rights, privileges, and immunities under the Fourteenth Amendment to the United States Constitution. Although she does not explicitly set forth the manner in which her Fourteenth Amendment rights were violated, plaintiff is apparently alleging that she was deprived of her liberty without due process of law. However, since the crux of plaintiff's complaints is that she was stopped for a traffic violation and placed under arrest without probable cause, her stop by defendant and her subsequent arrest must be analyzed under the Fourth Amendment's objective reasonableness standard rather than the substantive due process standard of the Fourteenth Amendment. *See Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

## D. PLAINTIFF'S FOURTH AMENDMENT CLAIM

As previously stated, the crux of plaintiff's complaint is that she was stopped for a traffic violation and subsequently placed under arrest allegedly without probable cause. The Fourth Amendment to the United States Constitution provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The pivotal question which must be resolved in regard to plaintiff's alleged Fourth Amendment claim revolves around whether or not defendant had probable cause to believe that a traffic violation had occurred when he stopped plaintiff and had probable cause to place her under arrest for driving under the influence of drugs or intoxicants. Probable cause has been defined by the Sixth

Circuit Court of Appeals as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990). The establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983); *United States v. Barrett,* 890 F.2d 855 (6th Cir.1989). As noted by the United States Supreme Court in *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983):

> [P]robable cause is a flexible, common sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief" ... that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required.

(Citations omitted). *Texas v. Brown,* 460 U.S. at 732, 103 S.Ct. at 1543, 75 L.Ed.2d 502 (1983). In addition, the existence of probable cause should be determined on the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This totality of the circumstances analysis includes a realistic assessment of the situation from a police officer's prospective. *United States v. Barrett,* 890 F.2d at 861.

The Sixth Circuit Court of Appeals has recently held that so long as a police officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment. The court went on to note that a traffic stop is reasonable if there was probable cause for the stop, and that this probable cause determination, like all probable cause determinations, is fact-dependent and will turn on what the

---

cessive fines. Since plaintiff has not asserted that she was subjected to excessive bail or fines, it is assumed that she is complaining about being subjected to cruel and unusual punishment. However, as pointed out by defendant, the con-

stitutionality of any detention or treatment prior to a conviction falls within the due process clause, not the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872, n. 16, 60 L.Ed.2d 447 (1979).

officer knew at the time he made the stop. *United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir.1993). "Under this test," the Sixth Circuit ruled,

> it is clear that the courts may not determine whether there was probable cause by looking at events that occurred after the stop.... Conversely, if the facts known to the officer at the time of the stop were sufficient to constitute probable cause to believe that a traffic violation had occurred, a reviewing court may not look at the officer's ordinary routine, or his conduct or conversations that occurred before or after the stop to invalidate the stop as pretextual.

*Id.* at 391; *see also, United States v. McCully,* 21 F.3d 712 (6th Cir., 1994) (electronic citation: 1994 FED App. 0117p (6 Cir.) file name: 94a0117p.06).

 In conformity with the directive of the Sixth Circuit that the probable cause determination is fact-dependent and turns on what the officer knew at the time he made the stop, this court must discern what defendant knew at the time he stopped plaintiff. Defendant states in his affidavit that on September 20, 1992, at approximately 12:30 a.m., he was traveling in the left east-bound lane of Cumberland Avenue adjacent to the U–T campus when he noticed plaintiff's vehicle crossing over into his lane from the east-bound right lane. He states that he swerved into the west-bound lane to avoid a collision with plaintiff's vehicle and that plaintiff's vehicle crossed all the way into the left lane of traffic and swerved back into the right lane of traffic and continued traveling east-bound. Defendant pulled into the right lane behind plaintiff, activated his emergency lights, and briefly hit his siren in an attempt to pull plaintiff's vehicle over. When plaintiff's vehicle finally stopped, he notified police headquarters that he had effected a traffic stop, called out the license plate number, and turned his spotlight on the rear of plaintiff's vehicle. He got out of his car and began approaching plaintiff's vehicle, but when he got approximately half way to plaintiff's car, she accelerated and took off. Believing that plaintiff was deliberately fleeing from him, defendant ran back to his vehicle, notified the station that he was in pursuit, activated his siren, and began to pursue plaintiff's car. Defendant pursued plaintiff until another U–T patrol car pulled into the east-bound lane partially blocking it, and plaintiff's vehicle then made a right-hand turn onto Estrabrook Drive and stopped.

After stopping plaintiff, defendant administered three field sobriety tests, consisting of the walk and turn test, the one-leg stand test, and the horizontal gaze nystagmus test, and based upon his observations of plaintiff's driving behavior and his judgment that she failed all three sobriety tests, he concluded that plaintiff had been driving while under the influence of an intoxicant or other stimulant in violation of state law, and placed plaintiff under arrest. When defendant requested plaintiff to turn around and put her hands behind her back for the purpose of placing handcuffs on her wrists, plaintiff abruptly and forcefully pulled away from him and started running back to her car. Based on these circumstances, defendant concluded that plaintiff was attempting to avoid arrest in a manner justifying the additional charge of resisting arrest. Defendant states in his affidavit that in arresting plaintiff he used procedures which were fully consistent with the training he had received at the Tennessee Law Enforcement Training Academy [Doc. 16a, Morgan Aff. attached].

In response to Officer Morgan's affidavit submitted in support of his motion for summary judgment, plaintiff has filed portions of her discovery deposition simply stating that she did not know why defendant stopped her [Doc. 19, Wynn Dep., p. 24]. In her statement of the facts, plaintiff asserts that defendant told her that he had stopped her for driving on the yellow line, but there is nothing in plaintiff's statement of the facts or the deposition excerpts appended to her response relevant to whether or not defendant had probable cause to stop her automobile for a traffic violation.

The Sixth Circuit Court of Appeals has stated that probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990), *quoted* by the

Sixth Circuit in *United States v. Ferguson,* 8 F.3d at 392. Under the facts of this case, it is clear to the court that defendant did have probable cause to stop plaintiff's vehicle for a traffic violation which occurred in his presence. Moreover, it is equally apparent to the court that defendant had probable cause to arrest plaintiff for driving under the influence in violation of section 55–10–401, Tennessee Code Annotated.

Plaintiff characterizes the field sobriety tests administered by defendant as "pseudo-sobriety tests" and asserts that defendant in bad faith harassed her by forcing her to take these tests. As pointed out by defendant, however, the HGN test which plaintiff apparently characterizes as a "pseudo-sobriety test" has been found by the Tennessee Court of Criminal Appeals to be reasonably trustworthy when used by a trained officer. "All that the test establishes is probable cause to believe that the driver is under the influence of an intoxicant," the Tennessee Court of Criminal Appeals ruled. "[T]he HGN test provides an indicia of intoxication. Taken in conjunction with other evidence, it can lead to the conclusion that the subject of the test was intoxicated." *State of Tennessee v. Moskal,* Case No. 01–c–019203cc00092, 1992 WL 235166 (Court of Criminal Appeals, Tenn., September 23, 1992).

Based upon defendant's observation of plaintiff's driving (and specifically after witnessing plaintiff swerving into the lane of traffic in which the police car was traveling requiring the police car to swerve into another lane of traffic), considering the defendant's observation of plaintiff after he made the traffic stop, and in view of the affidavit of defendant that in his judgment plaintiff failed all three sobriety tests, it is apparent to the court that a reasonable police officer would have concluded that there was probable cause to stop and subsequently to arrest plaintiff for driving under the influence in violation of section 55–10–401, Tennessee Code Annotated. Therefore, the court concludes that plaintiff's rights under the Fourth Amendment have not been violated under the circumstances of this case.

For the foregoing reasons, the court concludes that plaintiff has not been deprived of any rights, privileges, or immunities secured by the Constitution and laws and that her claims asserted under 42 U.S.C. § 1983 must fail. Accordingly, it is my conclusion that defendant is entitled to summary judgment in his individual capacity because the pleadings, portions of plaintiff's deposition, and the record as a whole, together with the affidavits submitted by defendant, show that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law.

## IV. DEFENDANT'S ASSERTION OF THE DEFENSE OF QUALIFIED IMMUNITY

While it is my conclusion that defendant is entitled to summary judgment in his individual capacity because he did have probable cause to stop and place plaintiff under arrest initiating plaintiff's claims under 42 U.S.C. § 1983, even if defendant did not have probable cause to stop and arrest plaintiff, it is also my conclusion that defendant is entitled to rely upon the defense of qualified immunity.

The Sixth Circuit Court of Appeals has recently noted that the difficulty of analyzing whether qualified immunity applies to a particular case "is contributed to by the fact that immunity jurisprudence sometimes has been less than completely clear both in the Supreme Court and in our court. Since there is a plethora of cases filed against public officials, and since immunity of one kind or another is frequently a first line of defense, there is no shortage of cases discussing immunity. As is often the case, however, more cases do not necessarily result in greater clarity." *Megenity v. Stenger,* 27 F.3d 1120 (6th Cir.1994) (electronic citation: 1991 FED App. 0222P (6th Cir.) File Name: 94a0222p.06).

In this case it appears clear to this court that probable cause did exist for plaintiff's stop for a traffic violation and for plaintiff's subsequent arrest. The application of qualified immunity to this case is problematic, therefore, since the court's finding of probable cause supports a general summary judgment, not a summary judgment based on qualified immunity. *Megenity v. Stenger, su-*

pra, 1124. In order to thoroughly analyze plaintiff's claims, however, it appears necessary to assess the application of qualified immunity to the defendant's actions in this instance.

A case presenting facts strikingly similar to those presented by the instant case was addressed by the Sixth Circuit Court of Appeals in *Hutsell v. Sayre*, 5 F.3d 996 (6th Cir.1993), wherein the plaintiff filed a Fourth Amendment action under 42 U.S.C. § 1983 against the University of Kentucky, its board of trustees, and two officers of the University of Kentucky police department. The Eastern District of Kentucky dismissed the action and the Sixth Circuit affirmed, finding specifically that the state university was an "arm of the state" and that the action against the university, its trustees, and the police officers, insofar as they were acting in their official capacities, was barred by the Eleventh Amendment. That left plaintiff's claim against the officers in their individual and personal capacities, for which the Eleventh Amendment provided no immunity. *Hafer v. Melo*, 502 U.S. 21, ——, 112 S.Ct. 358, 364, 116 L.Ed.2d 301 (1991); *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, the Sixth Circuit noted, the defendants may assert the defense of qualified immunity to the extent that their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Hutsell v. Sayre*, 5 F.3d at 1009.[3]

The proper analysis for a defendant's entitlement to qualified immunity, the Sixth Circuit ruled, consists of: (1) whether plaintiff has asserted a violation of a known civil constitutional right; and (2) whether the constitutional right was so clearly established at the time in question that a reasonable official in defendant's position would have known that he was violating plaintiff's constitutional rights. A court must rule in the affirmative on the first issue before considering the second, the Sixth Circuit held. *Id., citing Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991), and *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 339 (6th Cir.1990). Plaintiff in that case asserted that the affidavit signed by defendant when he applied for plaintiff's arrest warrant failed to establish probable cause and that the photographic identification procedure used by the police was impermissibly suggestive. The district court had found that there was probable cause for the issuance of the arrest warrant, that the photographic identification procedure used by the police was not impermissibly suggestive, and that the officers were entitled to qualified immunity in their individual capacities. Thus, the district court dismissed the action and the Sixth Circuit Court of Appeals affirmed. *Hutsell v. Sayre*, 5 F.3d 996 (6th Cir.1993).

In a recent published opinion on qualified immunity, the Sixth Circuit Court of Appeals noted that qualified immunity protects a police officer from being sued for his discretionary actions as long as the officer neither " 'knew [n]or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights affected or ... took action with the malicious intention to cause a deprivation of a constitutional right....' " *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir.1994) (Electronic citation: 1994 FED App. 0153P (6th Cir.); File name: 94a0135P.06), *citing Robinson v. Bibb*, 840 F.2d 349, 350 (6th Cir.1988) (*quoting Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975)).

In that decision, the Sixth Circuit stated, "The question whether an official is protected by qualified immunity does not turn on the subjective good faith of the official; rather, it turns on the 'objective legal reasonableness' of his actions, assessed in light of the legal

---

**3.** In ruling on a summary judgment motion, a district court should consider the allegations put forth by the plaintiff, and "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

rules that were 'clearly established' at the time the actions were taken. *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)." *O'Brien v. City of Grand Rapids*, 23 F.3d at 999.

■ Resolution of the qualified immunity issue is a question of law for the district court. *Poe v. Haydon*, 853 F.2d 418, 424 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989); *O'Brien v. City of Grand Rapids*, *supra* at 998. In discussing the defense of qualified immunity, the Sixth Circuit has held:

[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987) (*citing Harlow*, 457 U.S. at 819 [102 S.Ct. at 2739] ); *see also*, Comment, Qualified Immunity for Law Enforcement Officials in Section 1983 Excessive Force Cases, 58 U.Cin.L.Rev. 243 (1989) (for an overview of the turn toward an objective standard). Hence, in determining whether an official is entitled to qualified immunity, the relevant inquiry is whether the actions of the offending officials "could reasonably have been thought reasonably consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038. When the officials' claim of immunity turns on decisional law, this court must focus on whether, at the time of the officer's acts, the right asserted was "clearly established" by looking to the decisions of the Supreme Court or the Sixth Circuit Court of Appeals. *Poe v. Haydon*, 853 F.2d 418, 423–24 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989) (citations omitted).

*Hall v. Shipley*, 932 F.2d 1147, 1150 (6th Cir.1991).

■ The Sixth Circuit Court of Appeals has ruled that the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Wegner v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991). Defendant bears the initial burden of coming forward with facts to suggest that he was acting within the scope of his discretionary authority during the incident in question, but thereafter, the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in defendant's position would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir.1992).

■ On the other hand, if there is a *factual* dispute as to a genuine issue of material fact involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether defendant did acts that violate clearly established rights, summary judgment should be denied if the undisputed facts show that the defendant's conduct did indeed violate clearly established rights. *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir.1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989).

To determine whether qualified immunity protects the defendant in this case, the court must inquire: (1) whether the plaintiff has asserted a violation of a known civil constitutional right; and (2) whether the constitutional right was so clearly established at the time in question that a reasonable official in the defendant's position would have known that he was violating the plaintiff's constitutional rights. *Hutsell v. Sayre*, *supra* at 1009, *citing Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *see also*, *O'Brien v. City of Grand Rapids*, *supra* at 999. Plaintiff in this case has asserted a violation of a known civil constitutional right, that is, her right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution. Therefore, since the answer to the first inquiry is affirmative, the court must next address the second prong of the two-prong analysis.

Plaintiff has asserted that the actions of defendant were intentional, malicious, reckless and in bad faith. If defendant's actions were motivated by the malicious intent to cause a deprivation of plaintiff's constitutional rights, then defendant would not be entitled to the protection of qualified immunity.

*Robinson v. Bibb,* 840 F.2d 349, 350 (6th Cir.1988) (*quoting Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975)). At oral argument, plaintiff asserted that defendant's action in telling her that she had passed the field sobriety tests administered to her and then proceeding to place her under arrest demonstrates a malicious intent to cause a deprivation of plaintiff's constitutional right to be free from unreasonable arrest and seizure.

However, as pointed out by the Sixth Circuit in *O'Brien v. City of Grand Rapids, supra,* qualified immunity does not turn on the subjective good faith of the official; rather, it turns on the "objective legal reasonableness" of his actions, assessed in light of the legal rules that were "clearly established" at the time the actions were taken. *Id.* at 999, *citing Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus, defendant's statements to plaintiff as to whether she passed none, some, or all of the field sobriety tests administered to her is not determinative of the "objective legal reasonableness" of his actions. What is important to a determination of whether defendant is entitled to qualified immunity is the objective legal reasonableness of his belief that plaintiff had committed a traffic violation and that probable cause existed for arresting plaintiff for driving under the influence of drugs or intoxicants based upon his observations of her driving behavior, the plaintiff's behavior after the traffic stop, and his judgment that she failed all three sobriety tests.

In similar vein, defendant's assertion that plaintiff was admittedly taking medication (Tegretol) for epilepsy which can cause disturbances of coordination, confusion, nystagmus, and abnormal involuntary movements (*see* Doc. 16a, Smith Aff. w/attachment), which could cause her to appear to be intoxicated, is immaterial to the issue of whether defendant's actions were in conformity with objective legal reasonableness. This fact may explain why defendant found that plaintiff failed her field sobriety tests, but it is not determinative of whether defendant's actions were objectively reasonable in light of the facts and circumstances confronting him,

without regard to his underlying intent or motivation. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

Plaintiff may be innocent of the charged offenses, and it may very well result that the state of Tennessee will not be able to establish plaintiff's guilt of the charged offenses beyond a reasonable doubt and plaintiff will be acquitted. However, that consideration is of no moment to the court's determination of whether, under the circumstances surrounding plaintiff's stop and subsequent arrest, the facts support the objective legal reasonableness of defendant's actions, assessed in light of the legal rules that were clearly established at the time the actions were taken. *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In final analysis, to determine whether defendant is entitled to qualified immunity in this case, this court must determine whether a reasonable police officer in the defendant's position should have known that his conduct was in violation of plaintiff's constitutional rights.

It is my conclusion that there are no factual disputes on which the question of qualified immunity turns in this case, and that the defendant is entitled to the protection of qualified immunity. Defendant did have probable cause to effectuate the traffic stop and subsequent arrest of defendant. While plaintiff has asserted a violation of a known civil constitutional right, and that constitutional right was clearly established at the time in question by the United States Constitution and decisional law, defendant's actions were objectively reasonable in light of the legal rules which were clearly established at the time the actions were taken. Therefore, it appears to this court that defendant would be entitled to rely upon the defense of qualified immunity in this instance.

## V. PLAINTIFF'S PENDENT JURISDICTION CLAIMS

█ Defendant has also moved for summary judgment in regard to plaintiff's pendent claims asserted under state law. He points out, and the court agrees, that state substantive law is controlling on pendent

state claims raised in federal court. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it had original jurisdiction. The Sixth Circuit Court of Appeals has ruled that a district court may refuse to exercise supplemental jurisdiction over pendent state claims following the dismissal of plaintiff's federal claim concerning which the court had original jurisdiction. *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178 (6th Cir.1993). If the sole premises for federal subject matter jurisdiction are extinguished, a district court may decline to exercise continuing pendent or supplemental jurisdiction over plaintiff's state law claims. *Wexley v. Michigan State University*, 821 F.Supp. 479 (W.D.Mich. 1993). Where a district court has dismissed federal claims and only state law claims remain, a federal court must balance considerations including judicial economy, convenience, fairness to litigants, and comity in deciding whether to exercise supplemental jurisdiction over the remaining state law claims. *Pension Plan of Public Service Co. of New Hampshire v. KPMG Peat Marwick*, 815 F.Supp. 52 (D.N.H.1993). In *Cruz v. City of Wilmington*, 814 F.Supp. 405 (D.C.Del.1993), the court held, upon granting summary judgment in favor of defendants on plaintiff's federal civil rights claims, that no overriding interest of judicial economy or convenience warranted the exercise of supplemental jurisdiction by the federal district court over plaintiff's state law claims and defendant's state law cross-claims.

In regard to plaintiff's state law claims in this case, it does not appear that judicial economy, convenience, fairness to litigants, and comity would be advanced by this court exercising pendent jurisdiction over plaintiff's state law claims of false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, outrageous conduct, negligence, and gross negligence. Since all of these are traditional state law claims and since defendant appears to be primarily relying upon a state statute granting absolute immunity to state employees acting within the scope of their employment (Tenn.Code Ann. § 9–8–307(h)), it does not appear that judicial economy, convenience, fairness to the litigants, or comity would be advanced by this court exercising supplemental jurisdiction over plaintiff's state law claims and it respectfully declines to do so. The courts of the State of Tennessee are certainly equally capable, if not more capable, of resolving traditional state law claims and of applying a state statute to a particular factual pattern than is a federal court. Therefore, nothing would be gained for either party by continuing this case in federal court.

## VI. CONCLUSION

For the reasons hereinabove set forth, it is the finding of the court that there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law under Rule 56, Federal Rules of Civil Procedure. In addition, this court declines to accept jurisdiction of plaintiff's pendent state claims which shall be dismissed without prejudice.

Order to follow.

## ORDER

For the reasons set forth in the court's memorandum opinion this day filed with the clerk, summary judgment shall enter in favor of defendant Charles V. Morgan, and against plaintiff, Trina Wynn, pursuant to Rule 56, Federal Rules of Civil Procedure, and plaintiff's federal claims are hereby DISMISSED. Plaintiff's pendent state law claims are hereby also DISMISSED, but without prejudice.

**IT IS SO ORDERED.**